MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
JODI MISHER PEIKIN
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

charwood@maglaw.com
(212) 880-9547

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
DEVIN M. CAIN
JASMINE JUTEAU
CURTIS B. LEITNER
JACOB W. MERMELSTEIN

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

July 21, 2020

**BY ECF**
Honorable Mary Kay Vyskocil

Re:   *Clarkson Recovery Corp. v. Ryzinski & Macniak*, 20 Civ. 4336 (MKV)

Dear Judge Vyskocil:

We represent the plaintiff Clarkson Recovery Corp. ("plaintiff") in the referenced matter, and write respectfully pursuant to Rule 4(A)(i) of Your Honor's Individual Rules to request a pre-motion conference in anticipation of filing (a) a motion for judgment on the pleadings on plaintiff's affirmative claim, (b) a motion to dismiss defendants' counterclaim, and (c) a motion to stay discovery pending resolution of the foregoing (fully dispositive) motions.

This case arises out of defendants' breach of their contractual obligations under a Guaranty that defendants and 39 Clarkson Associates LLC ("39 Clarkson") executed on April 10, 2019 (the "Guaranty"). Plaintiff has since been assigned all of 39 Clarkson's rights under the Guaranty. The Guaranty is attached hereto as Exhibit A (and was attached to the Complaint).

Prior to executing the Guaranty, 39 Clarkson hired ABR Builders ("ABR"), an entity *owned and controlled by defendants*, as the general contractor on a construction project (the "Project"). At defendants' request—in order to facilitate completion of the Project—in late December 2018, 39 Clarkson's principal, on behalf of 39 Clarkson, arranged for a $500,000 loan to be provided to ABR (the "Loan"). Correspondence between the parties confirms that the Loan was to have been repaid within 30 days. Approximately three months later, on April 4, 2019, ABR filed for bankruptcy, without having repaid the Loan. Shortly thereafter, on April 10, 2019, defendants (in their individual capacities) and 39 Clarkson executed the Guaranty, which, by its terms, was executed as "[i]n consideration of, and as an inducement for, [39 Clarkson's] extension and forbearance from collection of th[e] . . . [L]oan." Guaranty ¶ 1. Pursuant to the Guaranty, defendants "unconditionally and absolutely guarantee[d] to [39 Clarkson] . . . (a) the full and timely payment of the Loan upon demand . . . and (b) the completion of the Project up to the maximum amount of $1,000,000.00." *Id.* Moreover, in the Guaranty, defendants expressly agreed that their payment obligations under the Guaranty would be unaffected by (a) any dispute

regarding the Guaranty, (b) any dispute regarding the underlying Loan or Project, or (c) any bankruptcy, insolvency, or similar proceeding affecting ABR. *Id.* ¶¶ 3, 5. Defendants also agreed that plaintiff could seek recovery from them without first seeking recovery from ABR. *Id.* ¶ 4.

Notwithstanding (a) ABR's acceptance of the $500,000 Loan "to facilitate the completion . . . of . . . the Project," *id.* ¶ 1, and (b) defendants' guarantee of "completion of the Project up to the maximum amount of $1,000,000.00," *id.*, ABR abandoned the Project on May 6, 2019. Documentary evidence (in the form of correspondence from defendants to 39 Clarkson's principal) confirms ABR's abandonment of the Project on that date.  Documentary evidence further confirms that, at the time ABR abandoned the Project, it had performed only a fraction of the work necessary to complete the Project, and had been paid (in response to invoices it sent to 39 Clarkson) more than $1 million for purported work on the Project that it never performed. Moreover, to date, the $500,000 Loan has not been repaid. Accordingly, in January 2020, plaintiff (after it was assigned all of 39 Clarkson's rights under the Guaranty) sent written demand to defendants for repayment of the $1.5 million they owed under the Guaranty. None of the $1.5 million has been repaid.

Under the express terms of the Guaranty, defendants owe 39 Clarkson—and, thus, plaintiff (as 39 Clarkson's assignee)[1]—a guaranteed debt of $1.5 million. The Guaranty provides that it "shall be governed by the laws of the State of New York," *id.* ¶ 9, and, under New York law, a guaranty is treated like any other contract, and "enforced according to the plain meaning of its terms." *E.g.*, *Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 493 (2015). Accordingly, to prevail on its claim to enforce the Guaranty, "all that [plaintiff] need prove is an absolute and unconditional guaranty, the underlying debt, and [defendants'] failure to perform under the guaranty." *E.g.*, *Encore Nursing Ctr. Partners Ltd. P'ship-85 v. Schwartzberg*, 172 A.D.3d 1166, 1167-68 (2d Dep't 2019). Based on the documents attached to and incorporated in the Complaint, plaintiff can establish each of these requirements. *First*, the Guaranty reiterates multiple times that it constitutes "an absolute and unconditional guaranty of payment and performance." Guaranty ¶ 3; *see id.* ¶ 1. *Second*, ABR indisputably owes a debt of $1.5 million that is covered by the Guaranty (*i.e.*, the $500,000 Loan and the more than $1 million that it was paid for work it never performed on the Project). *Finally*, defendants have failed to perform under the Guaranty (*i.e.*, in response to a valid demand, they have not paid any of the $1.5 million that they guaranteed).

Defendants' arguments against enforcement of the Guaranty (which they raised in the parties' joint letter to the Court, dated July 17, 2020 (Dkt. 12)) are unavailing—and disproven by documents attached to and incorporated in the Complaint. *First*, defendants' assertion that ABR did not abandon the Project and was prevented from completing the Project is belied by their own May 6, 2019 email to 39 Clarkson's principal, in which they stated that they were "not in the position to capitalize and finish the project" and "suggest[ed he] look for another GC to finish the job." Defendants' assertion also is irrelevant to their obligation to repay the Loan. *Second*, defendants' assertion that the Guaranty is invalid for lack of consideration fails because, under settled law (and the circumstances here), the extension of the prior Loan was adequate consideration for the Guaranty, *see* N.Y. Gen. Obligations Law § 5-1105, as was 39 Clarkson's

---

[1] *See* Guaranty ¶ 1 (providing an "unconditional[] and absolute[] guarantee to [39 Clarkson] *and its successors and assigns*" (emphasis added)).

Page 3

forbearance from taking immediate action to enforce its rights as a creditor of ABR in the bankruptcy proceeding. *Third*, defendants' assertion that the Guaranty is invalid because it was executed after ABR filed for bankruptcy also fails because nothing in the bankruptcy laws prevents the principals of a debtor (*i.e.*, defendants here) from making the business decision to personally guarantee the debtor's obligations to a creditor while the debtor is in bankruptcy, including to prevent the creditor from taking immediate action to exercise its rights against the debtor in the bankruptcy. *Finally*, all of defendants' arguments against enforcement of the Guaranty fail for the additional (and overarching) reason that, as a matter of law, the type of "broad, sweeping and unequivocal language in [the] absolute and unconditional guaranty" here forecloses defendants from asserting "any . . . possible defense" to a demand that they perform. *136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12 (2d Cir. 2016); *Navarro*, 25 N.Y.3d at 494. Plaintiff thus is entitled to judgment on the pleadings.[2]

The "broad, sweeping and unequivocal language" in the Guaranty also requires dismissal of defendants' counterclaim (in which they assert that they were fraudulently induced to enter into the Guaranty). Under settled law, such "absolute and unconditional" language "forecloses [defendants] from asserting any defenses or counterclaims" in connection with the Guaranty. *E.g.*, *J.P Morgan Chase Bank, N.A. v. Reifler*, 2012 WL 12925172, at *2 (S.D.N.Y. 2012); *see also In re Nissan*, 2018 WL 2113228, at *6 (S.D.N.Y. 2018). That defendants' counterclaim sounds in fraud does not affect this conclusion, because the Guaranty here "contains an explicit disclaimer of all defenses based on the Guarantee itself, as well as a disclaimer of all defenses based on the validity of the Loan [or the Project]." *Reifler*, 2012 WL 12925172, at *3 (a guaranty with such language precludes all claims, including fraud-based claims); *see* Guaranty ¶ 3 (Guaranty here includes analogous disclaimer language).  Moreover, even if the counterclaim were not foreclosed by the text of the Guaranty, the counterclaim still would be subject to dismissal because it does not plead the required elements of its fraud claim with particularity. *E.g.*, *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Among other things, defendants have not alleged facts sufficient to establish that (a) plaintiff made a false statement, (b) even if such a false statement was made, defendants reasonably relied on it, or (c) defendants suffered any purported damages as a result—and defendants certainly have not alleged such facts with the specificity required by Rule 9(b).

Finally, based on (a) the strength of plaintiffs' motions for judgment on the pleadings and to dismiss defendants' counterclaim, (b) the fully dispositive nature of the two motions, (c) the unnecessary burdens (time and expense) that discovery will impose on the parties in a case that should be resolved through these motions, and (d) the lack of any prejudice to defendants from a stay, the matter should be stayed pending resolution of the motions. *E.g.*, *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (staying discovery in such circumstances).  Moreover, defendants have stated that if plaintiff moves for judgment on the pleadings, defendants will cross-move. Dkt. 12 at 5. While their motion will fail, the fact that they intend to cross-move further justifies a stay while any such motion is pending.

We look forward to addressing these issues with Your Honor at a pre-motion conference.

---

[2] That ABR is in bankruptcy is irrelevant to this case. *E.g.*, *In re South Side House, LLC*, 470 B.R. 659, 673 (Bankr. E.D.N.Y. 2012) ("debtor's bankruptcy case does not relieve a guarantor of its liability under the guaranty").

Page 4

Respectfully submitted,

/s/ Christopher B. Harwood
Christopher B. Harwood
Genevieve Hanft

cc:      Defendants' counsel (by ECF)